entered the market in approximately 2000, reaching approximately 50% of the market for peacekeeping rations contracts by October 2005.

### IX.   COUNT ONE – RICO VIOLATION

94. Plaintiff Supreme is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

95. Each of the Defendants is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

96. Defendants (including officers, agents and employees not named in this Complaint) other than Olga Yakovlev (the "RICO Defendants") composed a group of persons associated together for the common purpose of carrying out the fraudulent scheme described in this Complaint; namely, making secret payments and providing other non-cash benefits to Defendant Yakovlev and facilitating the transfer of cash payments to Defendant Yakovlev's off-shore bank accounts in exchange for confidential information and favorable treatment which enabled Defendant Compass to circumvent an otherwise aboveboard bidding and procurement process. As a result, the RICO Defendants constitute an association-in-fact enterprise (the "U.N. Bid-Rigging Enterprise") within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c); additionally, Defendants Yakovlev, Moxyco, Kuznetsov, Nikal, IHC, Testa and Dmitry constitute an association-in-fact enterprise (the "U.N. Crony Enterprise") within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c); additionally, the U.N. Procurement Service constitutes an enterprise (the "U.N. Procurement Fraud Enterprise") within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). (The U.N. Bid-Rigging Enterprise, the U.N. Crony Enterprise and the U.N. Procurement Fraud Enterprise are collectively referred to herein as the "U.N. Corruption Enterprises.")

97. During all relevant times, each of the Bid-Rigging and Bribery Enterprises was engaged in, and its activities affected by, interstate and foreign commerce, within the meaning of 18 U.S.C. § 1962(c).

98. During all relevant times, each of the RICO Defendants conducted and/or participated in the conduct of each of the Bid-Rigging and Bribery Enterprises, directly or indirectly, through a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1961(5), in violation of 18 U.S.C. § 1962(c).

99. During all relevant times, the RICO Defendants engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth above. The acts set forth above constitute a violation of one or more of the following statutes: 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1952 (racketeering) and 18 U.S.C. § 1956 (money laundering). Under New York law, the acts set forth above also constitute commercial bribing in the first degree under Penal Law §180.03, commercial bribe receiving in the first degree under Penal Law §180.05 and commercial bribe receiving in the second degree under Penal Law § 180.08, each of which constitutes racketeering activity within the meaning of 18 U.S.C. § 1961(1).

100. Each of the RICO Defendants committed and/or aided and abetted the commission of two or more of these acts of racketeering activity.

101. The acts of racketeering activity referred to in the previous paragraph constituted a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5). The acts alleged were related to each other by virtue of common participants, a common victim (Plaintiff Supreme), a common method of commission and the common purpose and common result of a scheme designed to obtain through bribery U.N. contracts and confidential competitor information for the benefit of Defendant Compass by bribing Defendant Yakovlev and

facilitating the transfer of Defendant Yakovlev's fraudulently-obtained proceeds. The fraudulent scheme described herein began in or about 2000 and would have continued perpetually but for its discovery in or about June 2005 by the United States Attorney's Office for the Southern District of New York.

102. As a result of the RICO Defendants' violation of 18 U.S.C. § 1962(c), Plaintiff Supreme lost U.N. foodservice contracts that could be worth in excess of $350 million, a significant portion of which represents Supreme's anticipated profits from performing these contracts, plus additional substantial costs incurred in preparing bid submissions for contracts that were fraudulently obtained by Defendant Compass.

103. As a result of the RICO Defendants' misconduct, each RICO Defendant is liable for Plaintiff Supreme's losses in an amount to be determined at trial.

104. Pursuant to the RICO Act, 18 U.S.C. § 1964(c), Plaintiff Supreme is entitled to recover threefold its damages plus costs and attorneys' fees from each of the RICO Defendants.

### X.   COUNT TWO – RICO CONSPIRACY

105. Each of the Defendants is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(d).

106. The RICO Defendants conspired to commit the violation of 18 U.S.C. § 1962(c) described in Section IX of this Complaint.

107. During all relevant times, the RICO Defendants were associated with the Bid-Rigging and Bribery Enterprises as set forth in paragraph 97 above.

108. During all relevant times, each RICO Defendant agreed and conspired to violate 18 U.S.C. § 1962(c), that is, agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of each of the Bid-Rigging and Bribery Enterprises through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

109. The RICO Defendants (including officers, agents and employees not named in this Complaint) committed and caused to be committed a series of overt acts in furtherance of the conspiracy alleged herein and to effect the object thereof.

110. As a result of the RICO Defendants' violations of 18 U.S.C. § 1962(d), Plaintiff Supreme lost U.N. foodservice contracts that could be worth in excess of $350 million, a significant portion of which represents Supreme's anticipated profits from performing these contracts, plus additional substantial costs incurred in preparing bid submissions for contracts that were fraudulently obtained by Defendant Compass.

111. As a result of the RICO Defendants' conspiracy, each RICO Defendant is liable for losses to Plaintiff Supreme in an amount to be determined at trial.

112. Pursuant to the RICO Act, 18 U.S.C. § 1964(c), Plaintiff Supreme is entitled to recover threefold its damages plus costs and attorneys' fees from each of the RICO Defendants.

### XI. COUNT THREE – SHERMAN ACT § 1

113. Plaintiff Supreme is a "person" within the meaning of 15 U.S.C. § 7.

114. Each of the Defendants is a "person" within the meaning of 15 U.S.C. § 7.

115. Beginning in or about 2000, if not earlier, through June 2005, Defendants engaged in a contract, agreement, arrangement, combination and conspiracy to commit unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

116. This contract, agreement, arrangement, combination and conspiracy consisted of, among other things, an agreement by Defendants to rig the award of U.N. contracts for the provision of food rations to peacekeeping forces so that Defendant Compass would be awarded these contracts and would continue to retain these contracts. This bid-rigging took place in New

York at U.N. Headquarters, with the assistance of Defendants Yakovlev and Kuznetsov, and facilitated by Defendant IHC as the so-called "vendor intermediary."

117.    Defendants' bid-rigging activities are a *per se* violation of the Sherman Act.

118.    As a result of Defendants' *per se* violation of the Sherman Act, Defendants restrained competition in the marketplace, thereby preventing Plaintiff Supreme from competing freely and obstructing the free and fair determination of contract prices.

119.    By corrupting the Procurement Service in the U.N.'s Headquarters in New York, Defendants' violations of the Sherman Act have injured competition in the market for contracts to supply food rations to U.N. peacekeeping missions.

120.    As a result of Defendants' conduct, Plaintiff Supreme lost U.N. food rations contracts that could be worth in excess of $350 million plus additional significant amounts resulting from costs incurred in the preparation of bid submissions for contracts that were fraudulently obtained and fraudulently retained by Defendant Compass.

121.    Plaintiff Supreme's injuries were not independent of Defendants' big-rigging activities in New York.  Plaintiff's Sherman Act claim results from the direct, substantial and reasonably foreseeable effect of Defendants' anti-competitive and unlawful conduct on United States commerce.

122.    As a result of Defendants' conduct, each Defendant is liable for Plaintiff Supreme's losses in an amount to be determined at trial.

123.    Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Plaintiff Supreme is entitled to recover threefold its damages plus costs and attorneys' fees from each Defendant and injunctive relief.

## XII. COUNT FOUR – ATTEMPTED MONOPOLIZATION – SHERMAN ACT § 2

124. Beginning in or about 2000, if not earlier, through June 2005, Defendants have knowingly, intentionally and with specific intent to do so, attempted to monopolize the market for U.N. contracts to supply food rations to peacekeeping missions, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

125. The attempt to monopolize this market has been effectuated by the means and the overt acts set forth above, among others.

126. Defendants have attempted to:

   (i) control the award of contracts to supply food rations to U.N. peacekeeping missions;

   (ii) corrupt the U.N. bidding process for contracts to supply food rations to U.N. peacekeeping missions;

   (iii) deprive the U.N. of the benefits of a free and fair competitive bidding process for contracts to supply food rations to U.N. peacekeeping missions;

   (iv) deprive the competitors of Defendant Compass, including Supreme, of the opportunity to compete in a free and fair competitive bidding process for contracts to supply food rations to U.N. peacekeeping missions;

   (v) eliminate, reduce, limit and foreclose competition in the market for contracts to supply food rations to U.N. peacekeeping missions; and

   (vi) injure, restrain and eliminate competition in the market.

127. As a result of the conduct alleged herein, Defendant Compass gained control of such a substantial share of the market for contracts to supply food rations to U.N. peacekeeping missions that a dangerous probability existed that Defendant Compass would succeed in monopolizing that market.

128. Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Plaintiff Supreme is entitled to recover threefold its damages, plus costs and attorneys' fees from each Defendant and injunctive relief.

### XIII. COUNT FIVE – CONSPIRACY TO MONOPOLIZE – SHERMAN ACT § 2

129. Beginning in or about 2000, if not earlier, through June 2005, Defendants have willfully, knowingly, intentionally and with specific intent to do so, combined and conspired to monopolize the market for U.N. contracts to supply food rations to peacekeeping missions, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

130. This combination and conspiracy to monopolize the market for contracts to supply food rations to U.N. peacekeeping missions has been effectuated by the means and overt acts set forth above, among others.

131. Defendants intended by their actions to restrain trade in the market for contracts to supply food rations to U.N. peacekeeping missions in the manner set forth above.

132. The combination and conspiracy to monopolize has had, among other things, the effects detailed above.

### XIV. COUNT SIX – RESTRAINT OF TRADE – DONNELLY ACT

133. Beginning in or about 2000, if not earlier, through June 2005, Defendants engaged in a contract, agreement, arrangement and combination in unreasonable restraint of trade and commerce in violation of the Donnelly Act, §§ 340 *et seq.* of New York General Business Law.

134. This contract, combination, agreement and arrangement consisted of, among other things, an agreement by Defendants to rig the award of U.N. contracts for the provision of food rations to peacekeeping forces so that Defendant Compass would be awarded those contracts and would continue to retain those contracts.

135. As a result of this conspiracy, Defendants restrained competition in the marketplace, thereby preventing Plaintiff Supreme from competing freely and obstructing the free and fair determination of contract prices.

136. Defendants' bid-rigging activities are a *per se* violation of the Donnelly Act.

137. As a result of Defendants' conspiratorial conduct, Plaintiff Supreme lost U.N. food rations contracts that could be worth in excess of $350 million, a significant portion of which represents Supreme's anticipated profits from performing these contracts, plus additional substantial costs incurred in preparing bid submissions for contracts that were fraudulently obtained by Defendant Compass.

138. Defendants' violations of the Donnelly Act took place in New York, at U.N. Headquarters, and Plaintiff sustained injury to its business and property as a result of Defendants' anti-competitive and wrongful conduct perpetrated in New York.

139. As a result of Defendants' conspiracy, each Defendant is liable for Plaintiff Supreme's losses in an amount to be determined at trial.

140. Pursuant to § 340(5) of New York General Business Law, Plaintiff Supreme is entitled to recover threefold its damages plus costs and attorneys' fees from each of the Defendants and injunctive relief.

XV. **COUNT SEVEN – ATTEMPTED MONOPOLIZATION – DONNELLY ACT**

141. Beginning in or about 2000, if not earlier, through June 2005, Defendants have knowingly, intentionally and with specific intent to do so, attempted to monopolize the market for U.N. contracts to supply of food rations to peacekeeping missions, in violation of the Donnelly Act.

142. The attempt to monopolize this market has been effectuated by the means and the overt acts set forth above, among others.