143. Defendants have attempted to:

  (i) control the award of contracts to supply food rations to U.N. peacekeeping missions;

  (ii) corrupt the U.N. bidding process for contracts to supply food rations to U.N. peacekeeping missions;

  (iii) deprive the U.N. of the benefits of a free and fair competitive bidding process for contracts to supply food rations to U.N. peacekeeping missions;

  (iv) deprive the competitors of Defendant Compass, including Supreme, of the opportunity to compete in a free and fair competitive bidding process for contracts to supply food rations to U.N. peacekeeping missions;

  (v) eliminate, reduce, limit and foreclose competition in the market for contracts to supply food rations to U.N. peacekeeping missions; and

  (vi) injure, restrain and eliminate competition in the market.

144. As a result of the conduct alleged herein, Defendant Compass gained control of such a substantial share of the market for contracts to supply food rations to U.N. peacekeeping missions that a dangerous probability existed that Defendant Compass would succeed in monopolizing that market.

145. As a result of Defendants' conduct, each Defendant is liable for Plaintiff Supreme's losses in an amount to be determined at trial.

146. Pursuant to § 340(5) of New York General Business Law, Plaintiff Supreme is entitled to recover threefold its damages plus costs and attorneys' fees from each of the Defendants and injunctive relief.

## XVI. COUNT EIGHT – CONSPIRACY TO MONOPOLIZE – DONNELLY ACT

147. Beginning in or about 2000, if not earlier, through June 2005, Defendants have willfully, knowingly, intentionally and with specific intent to do so, combined and conspired to monopolize the market for contracts to supply food rations to U.N. peacekeeping missions, in violation of the Donnelly Act.

148. This combination and conspiracy to monopolize the market for contracts to supply food rations to U.N. peacekeeping missions was effectuated by the means and overt acts set forth above, among others.

149. Defendants intended by their actions to restrain trade in the market for contracts to supply food rations to U.N. peacekeeping missions in the manner set forth above.

150. The combination and conspiracy to monopolize had, among other things, the effects detailed above.

151. As a result of Defendants' conduct, each Defendant is liable for Plaintiff Supreme's losses in an amount to be determined at trial.

152. Pursuant to § 340(5) of New York General Business Law, Plaintiff Supreme is entitled to recover threefold its damages plus costs and attorneys' fees from each of the Defendants and injunctive relief.

## XVII. COUNT NINE – INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE AND BUSINESS RELATIONS

153. Defendants knew that Plaintiff Supreme was a competitor of Defendant Compass's in the market for U.N. food rations contracts.

154. With respect to the Liberia Rations Contract, Defendants knew that Defendant Compass and Plaintiff Supreme were the finalists in the U.N.'s bidding process. With respect to the Burundi Rations Contract, Defendant Compass received early indication that its performance

was unacceptable to the United Nations only because Defendant Yakovlev disclosed confidential information to Defendant Compass. This breach by Defendant Yakovlev enabled Defendant Compass to correct its performance failures before the U.N. cancelled the Burundi Rations Contract and, perhaps, other contracts performed by Defendant Compass.

155. The Defendants intentionally interfered with Plaintiff Supreme's prospective business relations by paying bribes to obtain confidential information and favorable treatment from Defendant Yakovlev and using such information and treatment to fraudulently obtain and fraudulently retain U.N. foodservice contracts, including the Liberia Rations Contract, the Burundi rations Contract and others.

156. As a result of Defendants' intentional interference, Plaintiff Supreme lost U.N. foodservice contracts that could be worth in excess of $350 million, a significant portion of which represents Supreme's anticipated profits from performing these contracts, plus additional substantial costs incurred in preparing bid submissions for contracts that were fraudulently obtained by Defendant Compass.

157. As a result of Defendants' conspiracy, each Defendant is liable for Plaintiff Supreme's losses in an amount to be determined at trial.

### XVIII. COUNT TEN – ROBINSON-PATMAN ACT– AGAINST DEFENDANTS COMPASS, IHC, HARRIS, SEIWERT AND TESTA

158. Plaintiff Supreme is a "person" within the meaning of 15 U.S.C. § 7.

159. Defendants Compass, IHC, Harris, Seiwert and Testa are "persons" within the meaning of 15 U.S.C. § 7.

160. Plaintiff Supreme and Defendant Compass are competitors in the global market for contracts to supply food rations to U.N. peacekeeping missions.

161. Defendant Harris was formerly employed by Defendant Compass Group and was the CEO of Defendant ESS. Defendant Seiwert was formerly employed by Defendant ESS as an executive. Defendants Harris and Seiwert acted as agents for Defendant Compass in bidding for and performing various U.N. contracts.

162. Defendants IHC and Testa were agents of Defendant Compass and acted as Compass's "vendor intermediary" for U.N. contracts.

163. Defendants Compass, Harris and Seiwert, as vendors to the U.N., and Defendants IHC and Testa, as "vendor intermediary" for Defendant Compass, were engaged in commerce at all times relevant to this Complaint, as active participants in the preparation and submission of bids for U.N. food rations contracts, in competition with other U.N. vendors, including Plaintiff Supreme.

164. In the course of such domestic and foreign commerce, Defendants Compass, IHC, Harris, Seiwert or Testa or an agent, representative or other intermediary acting for or on their behalf, paid or granted a commission, brokerage or other compensation of significant value to Defendant Yakovlev, or an agent, representative or other intermediary acting for or on his behalf.

165. Defendants Compass, Harris and Seiwert paid this commission, brokerage or other compensation directly or indirectly, through Defendant IHC or Defendant Testa, to Yakovlev, who retained this payment for his personal benefit. The commission, brokerage or other compensation was not paid in exchange for services rendered in connection with the sale or purchase of goods.

166. At all times relevant to this Complaint, Yakovlev was an agent of the U.N., and owed fiduciary duties to the U.N. in such capacity. Accepting the bribes of Defendants Compass, IHC, Harris, Seiwert and Testa constituted a breach of fiduciary duty.

167. Yakovlev at all times concealed from the U.N. his acceptance of the bribes of Defendants Compass, IHC, Harris, Seiwert and Testa.

168. Receipt of the bribes constituted a *per se* violation of Section 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c).

169. Through their Robinson-Patman Act violation, Defendants Compass, IHC, Harris, Seiwert and Testa injured, destroyed or prevented competition in the market for contracts to supply food rations to U.N. peacekeeping missions. As a result of this violation, Supreme lost U.N. food rations contracts worth approximately $350 million, a significant portion of which represents Supreme's anticipated profits from performing these contracts, plus additional substantial costs incurred in preparing bid submissions for contracts that were fraudulently obtained by Defendant Compass.

170. Supreme's injuries resulted from the direct, substantial and reasonably foreseeable effect of the anti-competitive and unlawful conduct of Defendants Compass, IHC, Harris, Seiwert and Testa on domestic and foreign commerce.

171. As a result of their conduct, Defendants Compass, IHC, Harris, Seiwert and Testa are liable for Supreme's losses in an amount to be determined at trial.

172. Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Supreme is entitled to recover threefold its damages plus costs and attorneys' fees from Defendants Compass, IHC, Harris, Seiwert and Testa, as well as injunctive relief.

### XIX. COUNT ELEVEN – ROBINSON-PATMAN ACT – AGAINST DEFENDANT ALEXANDER YAKOVLEV

173. Plaintiff Supreme is a "person" within the meaning of 15 U.S.C. § 7.

174. Defendant Alexander Yakovlev is a "person" within the meaning of 15 U.S.C. § 7.

175. Plaintiff Supreme and Defendant Compass are competitors in the global market for contracts to supply food rations to U.N. peacekeeping missions.

176. As senior procurement officer of the U.N. in the Procurement Service, Yakovlev was engaged in commerce at all times relevant to this Complaint, making decisions regarding the award of U.N. contracts to various vendors that participated in bids for the award of U.N. contracts, including Plaintiff Supreme and Defendant Compass.

177. In the course of such domestic and foreign commerce, Yakovlev, and or an agent, representative or other intermediary acting for or on his behalf, received or accepted a commission, brokerage or other compensation of significant value from Defendants Compass, IHC, Harris, Seiwert or Testa, or an agent, representative or other intermediary acting for or on their behalf.

178. Defendants Compass, Harris and Seiwert paid this commission, brokerage or other compensation directly or indirectly, through Defendant IHC or Defendant Testa to Yakovlev, who retained this payment for his personal benefit. The commission, brokerage or other compensation was not paid in exchange for services rendered in connection with the sale or purchase of goods.

179. At all times relevant to this Complaint, Yakovlev was an agent of the U.N., and owed fiduciary duties to the U.N. in such capacity. Accepting the bribes of Defendants Compass, IHC, Harris, Seiwert and Testa, constituted a breach of fiduciary duty.

180. Yakovlev at all times concealed from the U.N. his acceptance of the bribes of Defendants Compass IHC, Harris, Seiwert and Testa.

181. Receipt of the bribes constituted a *per se* violation of Section 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c).

182. Through his Robinson-Patman Act violation, Yakovlev injured, destroyed or prevented competition in the market for the supply of food rations to U.N. peacekeeping missions. As a result of this violation, Supreme lost U.N. food rations contracts worth approximately $350 million, a significant portion of which represents Supreme's anticipated profits from performing these contracts, plus additional substantial costs incurred in preparing bid submissions for contracts that were fraudulently obtained by Defendant Compass.

183. Supreme's injuries resulted from the direct, substantial and reasonably foreseeable effect of the anti-competitive and unlawful conduct of Yakovlev on domestic and foreign commerce.

184. As a result of his conduct, Yakovlev is liable for Supreme's losses in an amount to be determined at trial.

185. Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Supreme is entitled to recover threefold its damages plus costs and attorneys' fees from Yakovlev, as well as injunctive relief.

XX. **COUNT THIRTEEN – UNJUST ENRICHMENT – AGAINST DEFENDANTS YAKOVLEV AND KUZNETSOV**

186. Supreme submitted each of its bids to the Procurement Service in response to a formal RFP with the understanding that the confidential information contained therein would be held in strict confidence, pursuant to U.N. procedures.

187. Defendants Yakovlev and Kuznetsov each had a duty to maintain Supreme's proposals in confidence, pursuant to U.N. procedures.

188. However, Defendant Yakovlev, assisted by Defendant Kuznetsov, failed to retain the confidentiality of Supreme's proposals. Instead, Defendants Yakovlev and Kuznetsov shared

Supreme's confidential information with Defendants Compass and IHC for the purpose of carrying out the fraudulent scheme described in this Complaint.

189. Defendants Yakovlev and Kuznetsov were unjustly enriched by receiving bribery payments in furtherance of this fraudulent scheme.

190. Equity, good conscience and the demands of justice require the imposition of a constructive trust upon all bribery proceeds received by Defendants Yakovlev and Kuznetsov.

191. Plaintiff Supreme is also entitled to damages for all amounts, to be determined at trial, by which Defendants Yakovlev and Kuznetsov were unjustly enriched by their misappropriation of the confidential information contained in Supreme's bids.

### XXI. COUNT FOURTEEN – UNJUST ENRICHMENT – AGAINST DEFENDANTS COMPASS AND IHC

192. Supreme submitted each of its bids to the Procurement Service in response to a formal RFP with the understanding that the confidential information contained therein would be held in strict confidence pursuant to U.N. procedures.

193. Defendants Compass and IHC knew or should have known that the U.N. procedures required that the information contained in Supreme's bids must be held in strict confidence.

194. Defendants Compass and IHC wrongfully sought to circumvent the confidentiality requirements of U.N. procedures to obtain confidential information contained in Supreme's bids through the means of the fraudulent scheme described herein for the purpose of "winning" valuable procurement contracts by undercutting Supreme's bids.

195. Defendants Compass and IHC used Supreme's bids and the information they contained to prepare Compass's bid submissions to the Procurement Service. Through such

improper means, Compass was able to undercut Supreme's bids, thus enabling Compass to prevent Supreme from winning the contracts.

196. Defendants Compass and IHC were unjustly enriched by obtaining and using the confidential information contained in Supreme's bids as a result of the fraudulent scheme described in this Complaint.

197. Equity, good conscience and the demands of justice require the imposition of a constructive trust upon all bribery proceeds received by Defendants Compass and IHC through their bribery.

198. Plaintiff Supreme is also entitled to damages for all amounts, to be determined at trial, by which Defendants Compass and IHC were unjustly enriched by their misappropriation of the confidential information contained in Supreme's bids.

## XXII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(1) awarding Plaintiff damages, including compensatory, treble and punitive damages, in an amount exceeding $125,000,000, as well as prejudgment and postjudgement interest, the precise amount of said damages to be determined at trial;

(2) entering appropriate injunctive relief including, but not limited to, an order directing Defendant Compass Group PLC and the individual Defendants to divest themselves of any interest each may have in Defendants ESS and IHC;

(3) awarding Plaintiff the costs, expenses and attorneys' fees incurred in prosecuting this action; and

(4) such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues and claims so triable.

Dated: New York, New York
       June 1, 2006

Respectfully submitted,

CONSTANTINE CANNON, P.C.

By: _____
Robert L. Begleiter (RB-7052)
Gary J. Malone (GM-3119)
Yang Chen (YC-3782)
Michael C. Rakower (MR-2914)

450 Lexington Avenue
New York, New York  10017

*Attorneys for Plaintiff*
*Supreme Foodservice AG*